UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Serhii L., | No. 26-cv-463 (KMM/EMB) |
| Petitioner, | |
| v. | ORDER |
| Pamela Bondi, in their official capacity as Attorney General of the United States; Kristi Noem, in her capacity as Secretary of the United States Department of Homeland Security; Tood M. Lyons, in his official capacity as Acting Director of the United States Immigration and Customs Enforcement; David Easterwood in his official capacity as Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement; | |
| Respondents. | |

---

Petitioner Serhii L. seeks a writ of habeas corpus under 28 U.S.C. § 2241. Pet., (Dkt. 1). As discussed below, the Petition is granted.

### BACKGROUND[1]

Serhii L. is from Ukraine. Pet. ¶ 3. He was admitted to the United States on October 18, 2023 as a refugee. Pet. ¶ 1. Serhii L. has lived in the United States since, residing in Minnesota. Pet. ¶¶ 41, 43. He has not been charged with or convicted of any crimes. Pet. ¶¶ 3, 44. Serhii L. is not in removal proceedings, and no removal order has been issued. Pet. ¶¶ 45–46. He has filed a Form I-485, the Application to Register Permanent Residence or Adjust Status. Pet. ¶ 47.

---

[1] The facts, taken from the Petition, are not disputed by Respondents. (Dkt. 6 at 1–2.)

1

On January 16, 2026, Respondents left a letter at Petitioner's apartment building "asking to meet with him." Pet. ¶ 3. Upon presenting himself to immigration authorities for that meeting on January 20, 2026, Serhii L. was arrested and detained. Pet. ¶¶ 1, 3. At the time of the Petition's filing, Serhii L. continues to be held in the custody of Immigration and Customs Enforcement ("ICE"). Pet. ¶ 1.

## DISCUSSION

Petitioner requests an order declaring his detention unlawful and requiring his immediate release from custody. Pet. ¶¶ 1–2. Respondents argue that the Petition should be denied and the Court should find that he is lawfully detained under 8 U.S.C. § 1159(a)(1)(C). The Court recently granted a similar habeas petition in *Abdi F. W. v. Trump*, No. 26-cv-208 (KMM/SGE) (D. Minn. Jan. 21, 2026) (Order (Dkt. 7)). Just as the Court found in *Abdi F. W.*, here, Petitioner has shown that he is entitled to a writ of habeas corpus.

A court can issue a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). That power "includes jurisdiction to hear habeas challenges to immigration-related detention." *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025). "The burden is on the petitioner to prove illegal detention by a preponderance of the evidence." *Id.*

This case concerns the government's power to detain a person who has been admitted into the United States as a "refugee,"[2] which requires the Court to consider the unique status of refugees within our complex network of immigration laws. "Admission as a refugee is a distinct lawful

---

[2] The Immigration and Nationality Act sets forth a specific definition of "refugee." 8 U.S.C. § 1101(a)(42).

2

immigration status." *Liban G. v. Noem*, No. 26-CV-0301 (SRN/ECW), 2026 WL 125689, at *2 (D. Minn. Jan. 16, 2026). Under the Immigration and Nationality Act (INA), refugees may be admitted to the United States following certain procedures. *See* 8 U.S.C. § 1157; *Liban G.*, 2026 WL 125689, at *2 (citing USCIS, *Refugees*, https://www.uscis.gov/humanitarian/refugees-and-asylum/refugees). Refugees may be conditionally admitted to the United States without presenting a visa upon arrival. *See Azarmanesh v. Bondi*, No. 23-cv-05210-LJC, 2025 WL 965955, at *12 (N.D. Cal. Mar. 31, 2025).

Those who have obtained conditional status as refugees are deemed to have been "admitted." *In re D-K-*, 25 I. & N. Dec. 761, 769 (B.I.A. 2012) ("[W]e conclude that under the language of the [INA] and regulations, and also in view of the context and structure of the provisions at issue, an alien admitted to the United States as a refugee has been 'admitted' for purposes of section 101(a)(13)(A) of the Act."). This means that a refugee's conditional admission can result in two "admissions" to the United States—the original conditional admission, and a later, longer-lasting admission if the refugee is adjusted to LPR status. *Id.* at 768 (stating that "a refugee who ultimately becomes a lawful permanent resident will have been 'admitted' twice—first, upon conditional admission under section 207 of the Act, and second, upon reinspection and adjustment to permanent resident status under section 209(a) of the Act[.]"). Petitioner's admission to the United States is currently the original conditional admission as a refugee, and his application to adjust to LPR status has not yet been adjudicated.

Moreover, admission as a refugee places limitations on the government's ability to initiate removal proceedings. *See id.* at 765, 769 (holding that, although removal proceedings may be initiated against a refugee whose refugee status has not been terminated, any charges of removability against such a refugee "must be based on the grounds of deportability under section

3

237 of the [INA]"). Under the law, a refugee's failure to obtain adjustment to LPR status by itself is not grounds for removal.

With these background principles in mind, the Court turns to the statute that Respondents argue gives them the authority to detain Petitioner—8 U.S.C. § 1159. However, Respondents point to no case law that supports their interpretation of § 1159 as authorizing continued detention of Petitioner.[3] That provision establishes a procedure for refugees to seek adjustment to LPR status after having been physically present in the United States for one year. Under § 1159, a refugee who has been admitted under § 1157, and whose admission has not been terminated, but who has not yet been adjusted to LPR status, "shall, at the end of such year period, return or be returned to the custody of the [DHS] for inspection and examination for admission to the United States as an immigrant in accordance with the provisions of sections 1225, 1229a, and 1231 of this title." 8 U.S.C. § 1159(a)(1); *see also* 8 C.F.R. § 209.1(a)(1). Thus, while § 1159(a) provides for a refugee's return to the custody of DHS, it does so only (1) to allow the government to inspect and examine the refugee for admission; and (2) subject to §§ 1225, 1229a, and 1231.

The statute's plain text and the applicable regulations contemplate a refugee's "return" to the "custody" of DHS for a limited time to serve a specified purpose—inspection and examination. *E.E. v. Bondi*, No. 26-cv-314 (JWB/DTS) (Order (Dkt. 7) at 7) (D. Minn. Jan. 17, 2026) ("The statute . . . permits custody for a specific and limited function: to allow DHS to conduct the inspection necessary to adjudicate adjustment of status under § 1159(a)(2)."); *see also* 8 C.F.R. § 209.1(a)(1) (requiring every refugee to apply "one year after entry in order for USCIS to

---

[3] Respondents cite only *Omanovic v. Crawford*, No. CV 06-0208-PHX, 2006 WL 2256630 (D. Ariz. Aug. 7, 2006). But *Omanovic* involved a petitioner whose application for adjustment of status had been denied due to the petitioner's criminal convictions, and the government had initiated removal proceedings against the petitioner charging him with removability due to the denial and his prior felonies. *Id.* at *3–4. Neither of those circumstances are present in this case.

4

determine his or her admissibility under [8 U.S.C. § 1182]"). On review, if there are any applicable grounds for removal, "ICE . . . may charge a refugee with removability . . . even if the individual's refugee status has not been terminated," and "USCIS may place the individual in removal proceedings charging applicable grounds of inadmissibility[.]" Policy Memorandum, U.S. Customs and Immigration Enforcement, Requests for Evidence and Notices of Intent to Deny, PM-11039.1, at 2 (May 10, 2010) ("2010 DHS Guidance"). "Accordingly, upon taking an unadjusted refugee into custody based upon a reasonable belief that he or she is removable, the [ICE Office of Detention and Removal Operations ("DRO")] first must finalize its determination whether to place the individual in removal proceedings . . . and, if so, whether to continue detention." *Id.*

The text of § 1159(a) further makes apparent that continued detention of a refugee following "inspection and examination for admission" under § 1159(a) must flow from §§ 1225, 1229a, and 1231. The Court finds that the record does not support Petitioner's continued detention under any of these provisions, and Respondents do not point to any of them to justify such continued detention. First, the mandatory-detention provisions of § 1225 only apply to certain arriving aliens who are inadmissible, 8 U.S.C. § 1225(b)(1), or who are deemed "applicant[s] for admission," *id.* § 1225(b)(2)(A). *See also Belsai D.S. v. Bondi*, No. 25-cv-3682 (KMM/EMB), 2025 WL 2802947, at *5–7 (D. Minn. Oct. 1, 2025) (distinguishing between detention under §§ 1225(b)(2) and 1226(a)). Section 1225 cannot justify Petitioner's detention because he was conditionally admitted to the United States as a refugee in October 2023, and, therefore, his entry into the country is deemed an "admission" under the INA. *See* 8 U.S.C. § 1101(a)(13)(A); *In re D-K-*, 25 I. & N. at 769. Nothing before the Court suggests that Petitioner falls into either category that is subject to mandatory detention under § 1225(b)(1) or 1225(b)(2).

Likewise, § 1231 cannot justify Petitioner's continued detention because the government has not shown that he is subject to a final removal order. Section 1231 mandates detention of an alien who has been ordered removed from the United States during the 90-day "removal period," which usually begins on the date that a removal order becomes administratively final. *See* 8 U.S.C. § 1231(a)(1)(A)–(B), (a)(2)(A). It also authorizes detention beyond the 90-day removal period when DHS determines that the person is "a risk to the community or unlikely to comply with the order of removal." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001) (citing 8 U.S.C. § 1231(a)(6)). Here, § 1231 is entirely inapplicable because, according to the record, Petitioner has not been ordered removed from the United States; indeed, removal proceedings have not even been initiated.

Lastly, because removal proceeding haven't been initiated against Petitioner, § 1229a cannot justify Petitioner's continued detention. Section 1229a governs removal proceedings, and it authorizes immigration judges presiding over them to decide whether an alien is inadmissible or deportable. 8 U.S.C. § 1229a(a)(1). To initiate such proceedings, the alien must be provided written notice of, among other things, the nature of the proceeding and the alleged basis for seeking removal. 8 U.S.C. § 1229(a)(1)–(2). "While removal proceedings are in progress, most aliens may be released on bond or paroled." *Zadvydas*, 533 U.S. at 683 (citing 8 U.S.C. § 1226(a)(2), (c) (1994 ed., Supp. V)). Detention during the pendency of removal proceedings may also be mandatory in certain circumstances that are not applicable to Petitioner, such as when the person has been convicted of serious crimes. *See* 8 U.S.C. § 1226(c). But here, where nothing before the Court suggests that Petitioner has been placed in removal proceedings, § 1229a is irrelevant and does not justify his continued detention.

6

Instead, it appears that Respondents consider Petitioner's detention an interim status as he awaits a determination on his LPR application or completion of his "inspection." Respondents argue that the Court should deny habeas relief because Petitioner's "detention is not indefinite," his "current status is preliminary," and his "inspection will occur in due course." Resp. at 2–3. But again, even had Petitioner not already applied to adjust his status, a failure to apply for "adjustment of status under [§ 1159] is not a sufficient ground to place [refugees] in removal proceedings, and therefore not a proper basis for detaining them." 2010 DHS Guidance at 2. And "except in case of emergency or other extraordinary circumstances, upon the arrest of an unadjusted refugee upon reasonable belief of removability," ICE must make a prompt determination "whether to release the individual or issue a Notice to Appear (NTA)" that "indicat[es] the removal charge(s) applicable to the alien." *Id.* (stating that the ICE DRO Field Office must make such a determination within "48 hours after the arrest").[4] Respondents cannot justify Petitioner's continued detention through an open-ended assurance that they will get around to conducting the inspection and examination required by § 1159(a), which presents their only identified basis for continued detention. *See Corina E. v. Bondi*, No. 26-cv-313 (JWB/DTS), Order (Dkt. 7) at 8 (D. Minn. Jan. 17, 2026) ("Respondents' reassurances that Petitioner's detention 'is not indefinite' and that her 'inspection will occur in due course' also cannot justify detention."); *E.E.*, Order at 7 (same).

---

[4] Petitioner was arrested by ICE on January 20, 2026. By January 23, 2026, Respondents had not conducted the inspection and examination required by § 1159 and represented only that it will occur within an undefined period. This exceeds the 2010 DHS Guidance document, which provides a 48-hour timeline for an inspection and examination. *See* 2010 DHS Guidance at 3 ("If a determination to place an unadjusted refugee in removal proceedings has not been made within the initial 48-hour period discussed above, the DRO Field Office should release the alien with a reminder that the INA imposes an obligation upon him or her to apply for adjustment of status under section 209(A) and to provide DHS with updated address information[.]"). As of today, Petitioner has been in custody for four days.

In sum, the Court concludes that § 1159(a) does not justify Petitioner's continued detention because he is not detained in accordance with §§ 1225, 1229a, or 1231. Therefore, the Court finds that Petitioner has met his burden to show that he is in custody in violation of the laws of the United States. 28 U.S.C. § 2241(c)(3). As courts within this district have recognized, when there is no valid statutory basis for detention, release is both "an available and appropriate remedy." *Ahmed M. v. Bondi*, No. 25-cv-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) (citing cases). Here, the Court finds that Respondents must promptly complete Petitioner's inspection and examination, failing which, they must release him. *See Corina E.*, Order at 9 (finding that "conditional relief" was appropriate in a case involving continued detention under § 1159(a)).[5]

## ORDER

For the reasons stated above, and based on the entire record, **IT IS HEREBY ORDERED THAT**

1. Petitioner Serhii L.'s Petition for Writ of Habeas Corpus is **GRANTED in part** as set forth herein.

2. Respondents shall, **within four days of this Order**, either:

    a. Complete inspection and examination of Petitioner Serhii L. pursuant to 8 U.S.C. § 1159(a), and file a notice confirming that inspection has been completed, identifying the outcome, and stating whether Respondents contend that continued detention is authorized on a specified lawful basis; or

    b. Immediately release Petitioner from custody **in Minnesota**, and file a notice confirming the date, time, and location of release.

**Let Judgment be entered accordingly.**

---

[5] Petitioner raises an additional and important argument in his Reply that 8 U.S.C. § 1159 does not authorize detention at all. Because relief has been granted on other grounds, the Court declines to address that argument at this time.

Date: January 24, 2026

                                                *s/Katherine M. Menendez*
                                                Katherine M. Menendez
                                                United States District Judge